**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|                          |   |                              |
|--------------------------|---|------------------------------|
| JOSEPH W.,               | : |                              |
|                          | : |                              |
|   plaintiff,   | : |                              |
|                          | : |                              |
| v.                       | : | CASE NO. 3:23-cv-00069 (MPS) |
|                          | : |                              |
| KILOLO KIJAKAZI,         | : |                              |
| COMMISSIONER OF SOCIAL   | : |                              |
| SECURITY,                | : |                              |
|                          | : |                              |
|   defendant.   | : |                              |

## RECOMMENDED RULING ON PENDING MOTIONS

Joseph W. ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g). Currently pending are plaintiff's motion for an order reversing or remanding his case (Dkt. #15-1.) and defendant's motion to affirm the decision of the Commissioner. (Dkt. #17-1.) The Honorable Michael P. Shea referred the motions to the undersigned for a recommended ruling.

For the reasons that follow, the undersigned recommends that plaintiff's motion to reverse, or in the alternative, remand (Dkt. #15-1), be GRANTED, and the matter be remanded for further proceedings consistent with this decision. The Commissioner's motion to affirm (Dkt. #17-1.) should be DENIED.

## PROCEDURAL HISTORY

Plaintiff initially filed for Social Security Disability Insurance Benefits under Title II on March 8, 2021 with an

alleged onset date ("AOD") of August 1, 2019. (R. 15.) Following

an initial denial on September 21, 2021 and upon reconsideration

on December 1, 2021, Administrative Law Judge Ronald J. Thomas

("ALJ") held a hearing on April 14, 2022. (R. 15.) Following the

hearing, ALJ Thomas issued a written decision denying

plaintiff's application on June 2, 2022. (R. 27.) Plaintiff

thereafter sought review by the Appeals Council, which was

denied on December 1, 2022. (R. 1-6.) Plaintiff then timely

filed this action seeking judicial review. (Dkt. #15-1.)

## FACTUAL BACKGROUND

On May 26, 2021, plaintiff protectively filed a Title II

application for disability insurance benefits. (R. 170-171.)

Plaintiff alleged an onset date of August 1, 2019 (R. 208.), and

alleged impairments of COPD, diabetes, lumbar back impairment,

cervical spine impairment, left shoulder impairment, and high

cholesterol. (R. 211.) Plaintiff uses a cane for ambulation. (R.

20.) Plaintiff's past relevant work history is as a casual

dining waiter. (R. 25.)

The medical records in the file reveal the following:

Plaintiff has a history of Chronic Obstructive Pulmonary

Disease (COPD), though he presented with normal pulmonary

function tests and no rales, rhonchi or wheezing at doctor's

examinations. (R. 355, 361, and 430.) Plaintiff also has a

history of umbilical hernia, and had surgery on May 27, 2021 to

repair this after it was recommended by Dr. Ross Mazo, his primary care physician. (R. 409, 441, and 427-28.)

Plaintiff had a work injury when he was 19 years old that resulted in "crushed disks" and was the beginning of his chronic back pain, according to treatment notes from Dr. Mazo. (R. 311.) After that injury, Plaintiff filed a claim for disability benefits, which was "denied at the hearing level on 9/28/95." (R. 64.) Plaintiff takes Metformin for his diabetes. (R. 396.)

Between October 2020 and August 2021, plaintiff weighed between 278 and 294 pounds, with a BMI ranging from 37.70 to 40.02, meaning he is obese. (R. 285, 389, and 423.) At the hearing he testified to being 285 pounds. (R. 46.)

Dr. Ralph Barbera, a chiropractor, treated plaintiff throughout the previous few years for low back pain. (R. 350.) Treatment notes from November 2019 and February 2021 document plaintiff's low back pain from L3-L5. (R. 351.) At the November 2019 visit, plaintiff presented with lower back pain radiating to his right hip, exhibited a decrease range of lumbar spine motion, had lumbar muscle tension, and positive straight leg raises in the supine position and intact sensations, and plaintiff was noted to have a "hypolordotic" lumbar curve. (R. 352.)

During a June 2021 visit, Dr. Barbera noted that plaintiff's "care is active with a prognosis of guarded," and

noted that he had seen plaintiff "periodically" for treatment of his lower back. (R. 350.)

In October of 2021, a letter from Dr. Barbera notes his no lifting recommendation. (R. 385.) Dr. Barbera indicated that plaintiff had visited twice in August 2021 for treatment of his lumbar strain. (R. 385.) At that time, plaintiff was found to have a decreased range of lumbar spine motion, and thus was treated with spinal adjustment and muscle stimulator therapy. (R. 385.) Dr. Barbera diagnosed plaintiff with lumbar dysfunction, lumbar radiculopathy, and lumbar intervertebral disc disorder with radiculopathy. (R. 21.) During a March 23, 2022 visit with Dr. Mazo, plaintiff denied back pain and joint pain/swelling. (R. 414.)

In August of 2021, the plaintiff saw Dr. Todd Friend after straining his back chasing a bat out of his home. Dr. Friend provided a diagnosis of lumbar radiculopathy and back muscle spasms, and prescribed Cyclobenzaprine and referred plaintiff to chiropractic care. (R. 391.) At this visit, Dr. Friend observed that plaintiff was obese, and was exhibiting lower back tenderness and paravertebral muscle spasms, though still presenting normal ranges of extremity motion and normal extremity strength. (R. 391.) At a follow-up visit on August 19, 2021, plaintiff reported improvement of pain while taking the

Cyclobenzaprine, while he still experienced occasional breakthrough pain. (R. 393.)

In September of 2021, plaintiff saw Dr. Freed, a chiropractor who gave a diagnosis of lumbar spine strain and right cervico-brachial syndrome. (R. 409.) At examination, plaintiff reported shoulder and neck pain, right upper extremity tingling, pain with cervical spine and right arm ranges of motion, and paraspinal hypertonicity with tenderness in the upper cervical spine. (R. 409.). In October of 2021, Dr. Freed reported significant overall improvement in plaintiff's condition. (R. 408.)

In January of 2022, plaintiff saw Dr. Freed, reporting continued pain, but exhibiting overall improvement as well as continued signs and symptoms. (R. 407.) At a January 25, 2022 visit, plaintiff presented with decreased paraspinal hypertonicity with point tenderness in the upper cervical spine, and was provided treatment of myofascial release and manipulation therapies. (R. 407.) Additionally, he was to continue a home walking program and therapeutic exercises. Id. On February 7, 2022, Dr. Freed provided a diagnosis of residual spinal sprains/strains. (R. 407.) While the plaintiff presented with decreased paraspinal hypertonicity at a visit in March 2022, in March and April 2022 he was still exhibiting point tenderness in the cervical, upper thoracic and lumbar spine.

Additionally, during the same period of time, plaintiff continued to see Dr. Freed, and demonstrated significant improvement in his left superolateral buttock pain, though he continued to exhibit neck, mid and low back pain. (R. 420.) Plaintiff's April 21, 2022 visit with Dr. Freed appears to be the most recent medical documentation of record, as noted in plaintiff's brief.(Dkt #15-1 at 5.)

In December of 2021, Dr. Kai Yee Lok, an acupuncturist, diagnosed plaintiff with flat feet, low back pain, and plantar fasciitis after plaintiff noted heel pain. (R. 417.) Plaintiff received treatment in the form of acupuncture, heat, electrical stimulation, and massage, which improved his pain and condition. (R. 417-418.) During a March 2022 visit, Dr. Lok noted that plaintiff's condition had improved, but further treatment was necessary for further improvement. (R. 418.)

Two state agency consultants conducted an assessment of plaintiff in September and November 2021, though it does not appear from the record that they ever actually examined him. They found that plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, and that he could sit, stand, and/or walk for about six hours during an eight-hour workday. (R. 65-66, R. 73-74.) The state agency consultants found plaintiff could frequently climb ramps and stairs and balance and occasionally climb ladders, ropes, or scaffolds,

stool, kneel, crouch and crawl. (R. 65-66, R. 73-74.) Lastly, they determined plaintiff must avoid concentrated exposure to extreme heat and cold, fumes, odors, dusts, gases, poor ventilation, and hazards. (R. 66., R. 74.) The ALJ found the opinions of the state agency consultants to be only partially persuasive, specifically that they did not fully consider plaintiff's upper extremity tingling, cervical related shoulder pain, and radiating pain in making some of their determinations. (R. 23.) Additionally, the ALJ found that the state agency consultants' findings regarding avoiding exposure to certain substances were inconsistent with the record of plaintiff's normal respiratory examinations. (R. 23.)

Plaintiff's wife stated that he needed help getting dressed, going to the bathroom, grocery shopping, cooking, and cleaning, and that he struggled sitting or standing for long periods of time. (R. 275.) A previous employer said plaintiff was unable to perform his job duties even after giving him accommodations. (R. 277.) Plaintiff reported being able to drive, cook simple means, text, and travel to Cape Cod and Texas. (R. 46-49.) Plaintiff has also reported that he helps get his children ready for school and bed, and "runs around" with them. (R. 259, 412.)

Plaintiff has presented in no acute distress at multiple examinations. (R. 398, 287, 414, and 430.) Many treatment notes

report findings including normal ranges of extremity motion, normal extremity strength, intact extremity sensations, and a normal gait. (R. 288, 355, and 431.) Plaintiff testified that despite having pain medication, he does not like to take it unless he is experiencing an "extreme amount of pain." (R. 42.)

## THE ALJ'S DECISION

Plaintiff requested a hearing before an administrative law judge ("ALJ") on January 3, 2022. On April 14, 2022, a hearing was held before ALJ Ronald J. Thomas. The ALJ issued an opinion on June 2, 2022, finding that plaintiff was not disabled within the meaning of the Social Security Act. At the outset, the ALJ noted that he had met his duty to ensure the record is fully and fairly developed, and it was complete and ready for decision. (R. 15.)

Applying the five-step framework, the ALJ found at step one that plaintiff had not engaged in any substantial gainful activity since his alleged onset date of August 1, 2019. (R. 18.) At step two, the ALJ found that plaintiff had the following severe impairments: obesity and spinal dysfunction and radiculopathy. (R. 18.) Here, the ALJ noted that the combined effects of obesity with other impairments may be greater than the effects if each impairment is considered separately. *See* SSR 19-2p. (R. 18.) The ALJ noted that he considered the effects of

plaintiff's obesity at each step of the evaluation process, including Listing analysis and RFC determination. (R. 18.)

At step three, the ALJ determined that plaintiff had no impairments or combination of impairments equal to a Listing. (R. 19.) Specifically, the ALJ concluded that plaintiff did not meet or medically equal Listing 1.15 for disorders of the skeletal spine resulting in the compromise of a nerve root. (R. 19.)

At step four, the ALJ determined that plaintiff had a "light" RFC. (R. 20.) The ALJ found that plaintiff could occasionally bend, balance, twist, squat, kneel, crouch, crawl, and perform personal automobile driving. (R. 20.) The ALJ found that plaintiff can frequently handle and finger bilaterally and occasionally reach overhead with the left non-master arm.[1] (R. 20.) The ALJ found that plaintiff requires the use of a cane for ambulation. (R. 20.) The ALJ found that plaintiff must avoid hazards such as heights, vibration and dangerous machinery, and must never climb ladders, ropes, or scaffolds nor operate left foot controls. (R. 20.)

At step five, the ALJ determined that plaintiff could not perform his past relevant work as a casual dining waiter. (R. 25.) The ALJ relied on the testimony of the vocational expert

---

[1] It appears from the record that plaintiff is left-handed, so this portion of the RFC likely requires correction. (R. 43-44.)

("VE") to determine that there were a significant number of jobs within the national economy which plaintiff could perform, including office helper, gate attendant, and information clerk. (R. 26.) The ALJ then concluded that plaintiff was not disabled within the meaning of the Social Security Act. (R. 27.)

Plaintiff requested review by the Appeals Council, which affirmed his denial on December 1, 2022. (R. 1.) Plaintiff then appealed to this Court.

## STANDARD OF REVIEW

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981).[2] "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner's conclusion is based upon the correct legal principles, and whether the decision is supported by

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

substantial evidence. <u>Johnson v. Bowen</u>, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this Court may not set aside the decision of the Commissioner if it is supported by substantial evidence. <u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. <u>Schauer v. Schweiker</u>, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit Court of Appeals has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Williams on Behalf of Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." <u>Williams</u>, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to an individual who has a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1). To determine whether a claimant is disabled

within the meaning of the SSA, the ALJ must follow a five-step

evaluation process as promulgated by the Commissioner.[3]

　　To be considered disabled, an individual's impairment must

be "of such severity that he is not only unable to do his

previous work but cannot . . . engage in any other kind of

substantial gainful work which exists in the national economy."

42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national

economy means work which exists in significant numbers either in

the region where such individual lives or in several regions of

the country." Id.[4]

## DISCUSSION

　　Plaintiff advances three main arguments to support

reversal. First, plaintiff argues that the ALJ failed to

adequately develop the administrative record. (Dkt. #15-1 at 11-

---

[3] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits the claimant's mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider the claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the severe impairment, the claimant has the residual functional capacity to perform the past work; and (5) if the claimant is unable to perform the past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

[4] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

20.) Second, plaintiff argues that the ALJ erred by not adequately considering the plaintiff's "intractable pain," and by finding his allegations not wholly credible. (Dkt. #15-1 at 20-22.) Finally, plaintiff argues that the ALJ's Step Five findings were unsupported, specifically that the national job incidence data was inaccurate and the hypothetical posed by the ALJ was defective. (Dkt. #15-1 at 22-30.)

Defendant argues that the ALJ properly developed the record (Dkt. #17-1 at 3-6), the ALJ reasonably evaluated plaintiff's subjective pain allegations (Dkt. #17-1 at 6-11), and that substantial evidence supports the ALJ's Step Five finding (Dkt. #17-1 at 11-14.)

The Court will address each issue in the order set forth by plaintiff.

### 1. *Development of the Administrative Record*

Plaintiff argues that the ALJ did not adequately develop the administrative record, by not including information about a work-related injury when plaintiff was 19 years old, and failing to require medical source statements about the plaintiff's function-by-function capabilities. (Dkt. #15-1 at 11-20.)

Defendant argues that the record was adequate for the ALJ to make a disability determination because it included treatment notes, results of objective diagnostic testing and administrative findings from the state agency reviewers, and

plaintiff failed to demonstrate any obvious gaps in the
evidence. (Dkt. #17-1 at 3-6.)

An ALJ has the affirmative duty to develop the record "in
light of 'the essentially non-adversarial nature of a benefits
proceeding.'" Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996)
(quoting Echevarria v. Secretary of HHS, 685 F.2d 751, 755 (2d
Cir. 1982). The ALJ does not have a duty to request additional
evidence where the evidence in the record is "adequate for [the
ALJ] to make a determination as to disability." Perez v. Chater,
77 F.3d 41, 48 (2d Cir. 1996).

In reaching his determination that the plaintiff has an RFC
of light work (20 CFR 404.1567(b)) with certain limitations, the
ALJ analyzed medical evidence including treatment records and
notes, reports from state agency consultants, and testimony from
the plaintiff and his wife. (R. 20-22.). No medical source
statements or function-by-function assessments were provided.
One recommendation at issue was from chiropractor Dr. Barbera,
who said the plaintiff should do no lifting, which the ALJ
stated was unpersuasive since there were no noted "abnormal
neurological or strength findings" and this directive was
inconsistent with other evidence in the record suggesting the
plaintiff had "normal upper and lower extremity strength, and
intact extremity sensations." (R. 24.) Many of the limitations
and abilities promulgated by the ALJ were only recommended by

the non-consulting state agency analysts, and not by any of plaintiff's treating doctors.

The ALJ mentioned statements from the plaintiff's wife that he required assistance getting dressed, toileting, food shopping, cooking, and cleaning, and had difficulty sitting or standing for long periods of time, and his past employer's assertion that even with accommodations, plaintiff was unable to perform his job duties. (R. 22.) The ALJ refuted these statements, however, finding that "their statements are not supported by the claimant's own reported activities and treatment notes." (R. 22.) The ALJ cited plaintiff's reported activities of driving, cooking, texting, and travelling by car and plane, as well as helping his children get ready and "running around" with them, and reported denial of problems toileting and or back and joint pain or swelling. (R. 22.) The ALJ also referenced plaintiff's participation in home walking and exercise programs. (R. 22.)

Overall, the ALJ determined that the plaintiff's conservative treatment, "relatively benign" medical exam results, his positive response to treatment and reported activities are inconsistent with the ability to sustain any work activity. (R. 23.)

### a. *Gaps in the Administrative Record*

Plaintiff argues that there are "obvious gaps" in the administrative record, including the lack of any information about an injury in the 1990s, no function-by-function assessments from specialists, and no medical source statements from treating physicians. (Dkt #15-1 at 12-13.) In making this argument, plaintiff relies on Sullivan v. Berryhill, No. 3:17-CV-1524 (MPS), 2018 WL 6075671, at *4 (D. Conn. Nov. 21, 2018) and cases cited therein. (Id.) In one such case, Cote v. Berryhill, medical source statements were found to be necessary for developing the record and resolving whether the plaintiff had the capacity for a "light" RFC because the extent of his work restrictions was not clear. Cote v. Berryhill, 17-cv-95 (WWE), 2018 WL 1225543, at *3-*4 (D. Conn., 2018). Cote appears to be directly on point here, as it found

> that the ALJ erred by failing to develop the record to include the medical source opinions. Although the medical record is lengthy, plaintiff's capacity to engage in light work employment is not resolved by the treatment notes. His living activities of cooking, doing laundry or housekeeping do not substantiate the finding that plaintiff could engage in employment in a light work capacity.

Id. The same is true here.

Plaintiff appears to argue that documentation regarding a 1990's work-related injury involving "crushed disks" was relevant to analyze his current condition. (Dkt. #15-1 at 12.)

He states it is "stunning" that there are no x-ray, MRI, CT
scans, or other radiological studies of his spine in the record,
in a case where the ALJ found a severe impairment of spinal
dysfunction and radiculopathy. (Dkt. #15-1 at 12.) Plaintiff
asserts that records of this injury likely were a significant
part of the previous disability application denied in 1995.
(Dkt. #15-1 at 12.)

Defendant responds by arguing that this desired information
did not demonstrate that plaintiff was disabled at the time of
the injury in the 1990s, and that plaintiff was able to engage
in substantial activity for many years since. (Dkt. #17-1 at 6.)
Plaintiff acknowledges that given his work history, "it cannot
be argued that whatever injuries he sustained in the early 1990s
were in and of themselves disabling going forward." (Dkt. #15-1
at 12 n.7). Instead, plaintiff asserts that the information
could provide insight on the severity of his current condition,
perhaps corroborating some of the claims of pain that the ALJ
rejected. Id. Defendant responds that Plaintiff has not shown
development of the earlier period to be necessary, and that he
has not explained how medical records from several decades ago
would help explain his functioning in 2019-2022. (Dkt. #17-1 at
6.)

In Sullivan, the court additionally cites to Rolon v.
Comm'r of Soc. Sec., 994 F.Supp.2d 496, 504 (S.D.N.Y. 2014) and

Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013). These cases illustrate instances where an ALJ needed to seek additional evidence. In Rolon, the Court remanded a case for further development of the record due to an inconsistency in the record related to plaintiff's alleged limitations. Rolon, 994 F.Supp.2d at 504. Instead of contacting the medical provider whose records contained the ambiguity, the ALJ simply gave no weight to that doctor's opinion. Id. at 505. The Court noted that an ALJ's duty to seek clarification of a conflict or ambiguity applies only to those that must be resolved in order to make the determination, and not minor or irrelevant inconsistencies. Id.

In Selian, the ALJ relied on a finding of a consultative physician after a single examination, ultimately concluding that Selian could lift twenty pounds occasionally and ten pounds frequently, despite his testimony that he wasn't able to carry even a gallon of milk. Selian, 708 F.3d at 421. The Court held that the ALJ should have contacted the doctor about the report at issue. Id. Many of these issues are not present in the instant case. There is no significant record conflict or ambiguity noted by the plaintiff regarding limitations or abilities, nor is there an assertion that any of the medical opinions were "remarkably vague."

Defendant responds that while an "ALJ has an affirmative duty to develop the record, it is Plaintiff's burden to

demonstrate his functional limitations." (Dkt. #17-1 at 4.)
Defendant argues that in this case the ALJ did consider the
entirety of the record in reaching an RFC determination and the
record was sufficient in light of the treatment notes, objective
diagnostic testing, and the prior administrative findings
contained therein. (Dkt. #17-1 at 4-5.)

Defendant relies on Perez v. Chater 77 F.3d 41, 48 (2d Cir.
1996) and Miller v. Comm'r of Soc. Sec. Admin., 784 F. App'x
837, 839 (2d Cir. 2019) (summary order) as similar cases where
the record contained no obvious gaps, was complete, and was
adequate for the ALJ to make a determination. In Perez, the
Court found that the ALJ satisfied his duty to develop the
record because he obtained medical records and reports from
multiple providers, and the "missing" information suggested by
the plaintiff was not necessary for a disability determination.
Perez, 77 F.3d at 48. Similarly, in Miller, records from
multiple healthcare providers had been obtained and used in the
RFC analysis, including from treating physicians, therapists,
and evaluators, as in Perez. Miller, 784 F. App'x at 839. The
plaintiff also had not specified which providers' records were
missing or what information those records would provide, and
thus the Court found that the record lacked any obvious gaps
requiring further development. Id.

In the case before the Court, it is not clear that there is ambiguity or vagueness in the records before the ALJ.  Similar to the situation in <u>Miller</u>, plaintiff has not specified any treatment provider or records that contain information relevant to the current state of plaintiff's ability to work.  While, perhaps, records of a previous injury or treatment could shed some amount of light on the current state of plaintiff's condition, there is no showing that the information would be sufficiently material to require remand.  The Court is not persuaded that the ALJ committed error in declining to seek or obtain the injury records from the 1990s.

### b. Medical Source Statements and the ALJ's RFC Determination

Plaintiff next argues that the ALJ erred by failing to require medical source statements. (Dkt. #15-1 at 11-20.) Defendant argues that the record was sufficient without such documents and that the ALJ had a sufficient record to allow for his RFC determination. (Dkt. #17-1 at 3-6.)

Plaintiff relies on <u>DeCava v. Berryhill</u>, 3:17-cv-01834 (MPS), 2019 WL 186656 (D. Conn. Jan. 14, 2019) and a number of cases cited therein to argue that medical source statements and opinions from treating physicians were needed for a proper RFC

determination.[5] The Court notes that there is also case law within this District suggesting that medical source statements are not always necessary, particularly when there is a plethora of other data such as treatment notes, examination records, and reports.[6]

In Cantres v. Berryhill, 3:17-cv-01866 (SALM), (D. Conn. Nov. 30, 2018), p. 18 (citations omitted), the Court determined that an ALJ must avoid "playing doctor," or interpreting raw medical data in functional terms and substituting his own judgment for competent medical opinion (Dkt. #15-1 at 14 n.20). The Court in Cantres reasoned, "where the medical findings in

---

[5] See, e.g., Felder v. Astrue, 2012 WL 3993594, at *11 (E.D.N.Y. Sept 11, 2012) (finding that when there is an absence of supporting medical opinion for an ALJ's RFC determination, the ALJ must request RFC assessment from the plaintiff's treating doctors); Marshall v. Colvin, 2013 WL 5878112, at *9 (W.D.N.Y. Oct. 30, 2013) (finding that the ALJ failed to develop the record by "gathering treating sources' opinions on how Plaintiff's impairments affected her ability to perform work-related activities," in a case requiring a heightened duty because of pro se status); Aceto v. Comm'r of Soc. Sec., 2012 WL 5876640, at *16 (N.D.N.Y. Nov. 20, 2012) (reasoning that treatment records and consultative reports were insufficient for development of the record, and treating physicians were needed to assess functional abilities). See also Staggers v. Colvin, 2015 WL 4751123, at *2 (D. Conn. Aug. 11, 2015) (internal quotation marks and citations omitted) ("[A] large body of case law hold[s] that an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.").
[6] "The plaintiff in the civil action must show that he was harmed by the alleged inadequacy of the record: '[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" Santiago v. Astrue, No. 3:10-cv-937(CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011)(quoting Shinseki v. Sanders, 556 U.S. 396, 129 S. Ct. 1696, 1706 (2009)).  Where "[t]he plaintiff makes only a general argument that any missing records possibly could be significant, if they even exist[,] . . . [t]hat argument is insufficient to carry his burden."  Santiago, 2011 WL 4460206, at *2 (rejecting that the ALJ was required to obtain additional medical records where the plaintiff did not attempt to obtain the medical records following the decision or indicate their importance).

the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual functional capacities the Commissioner may not make the connection himself. Thus, the ALJ may not interpret raw medical data in functional terms." Id. at 18.

Plaintiff further directs the Court's attention to a number of cases, including Vozzella v. Berryhill, 3:18-cv-00365 (DFM), 2019 WL 132451 (D. Conn. Mar. 25, 2019) and Luz S. v. Kijakazi, 3:20-cv-01573 (JCH), 2022 WL 875690 (D. Conn. Mar, 24, 2022). In Vozzella, the Court found that a gap in the record required remand, and a medical source opinion regaring plaintiff's limitations was needed in order to make a proper RFC assessment. Vozzella, 2019 WL 132451 at 83. In Luz S. there was only one medical source statement on record, which did not include a function-by-function assessment. Luz S., 2022 WL 875690 at *4. The Court noted that "in practice, Tankisi's sufficient evidence standard is often not met in cases where there is no medical source statement." Id. at *9. (quotations and citations omitted); See Tankisi v. Comm'r of Soc. Sec., 521 F.App'x 29 (2d Cir. 2013).

In Tankisi, the Court held that substantial evidence supported the ALJ's RFC determination. Tankisi, 521 F.App'x at 35. Regarding the lack of medical source opinions, the Court ultimately concluded that the record was extensive, and while

there were no formal opinions on the plaintiff's RFC from treating physicians, there was an assessment of limitations from a treating physician, as well as a "voluminous medical record assembled by the claimant's counsel that was adequate to permit an informed finding by the ALJ." Id. at 34. The Court noted that while the plain text of the Regulations "seems to impose on the ALJ a duty to solicit such medical opinions," further evidence was not necessary in that case. Id. at 33. Tankisi is often cited for the idea that "remand is not always required when an ALJ fails in his duty to request opinions, particularly where ... the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." Id. at 34.

Notably, in addition to an extensive record, Tankisi contained a limitations assessment by a treating physician, which is not present in the instant case. Even though the medical source standard is not completely strict, there is still an expectation that the ALJ will develop the record by seeking out all documents needed for the RFC determination. Here, as noted, more information is needed for a proper determination.

The plaintiff further points to discussions in Holt v. Colvin, 3:16-cv-01971 (VLB), 2018 WL 1293095 (D. Conn. Mar. 13, 2018) as an example of the need for medical source statements.

In Holt, the treating physicians' assessment of Plaintiff's functional limitations were found to be necessary because the record offered no insight into how plaintiff's impairments impacted her daily activities or work abilities, it merely indicated her diagnoses and symptoms. Id. at *7. Here, similarly, while the medical records describe plaintiff's impairments and diagnoses, they do not detail his day-to-day abilities or work limitations.

As held in Guillen v. Berryhill, the ALJ's duty to develop the record by including opinions of treating physicians is important in light of the weight that is often afforded to those opinions. Guillen v. Berryhill 697 F. App'x 107 (2d Cir. 2017). In Guillen, the Court found that ALJ failed to obtain a medical source statement from the plaintiff's treating physician, the existing records did not provide insight for how Guillen's impairments impacted her ability to work, or even undertake everyday activities, and the ALJ improperly rejected one of the plaintiff's diagnoses. Id. at 109. The case was remanded to the Commissioner for further proceedings, including assigning the case to a new ALJ and requesting medical source statements. Id.

In response to these arguments, defendant primarily cites Curry v. Comm'r of Soc. Sec., 855 Fed. Appx. 46, 49 (2d Cir. 2021)and Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013). Generally, both cases support the argument that RFC

24

determinations are the province of the ALJ, to make a decision given analysis of all available evidence. (Dkt. #17-1 at 7.) Defendant asserts that "it is the responsibility of the ALJ, and not a medical source, to assess a claimant's RFC, and there is no requirement that the ALJ's RFC finding mirror a medical opinion." (Dkt. #17-1 at 7.) Defendant makes note of the fact that the plaintiff has not identified the information that would be shown by documents regarding the injury from the 1990s or medical source statements. (Dkt. #17-1 at 5.) Defendant asserts that "these speculative requests for additional evidence are insufficient to meet [the plaintiff's] burden on appeal." (Dkt. #17-1 at 5.)

In Curry, the Court found the ALJ's RFC determination to be supported by substantial evidence. Id. at 49. In making his RFC determination, the ALJ had accorded only partial weight to a doctor's medical source opinion. Id. at 48. The Court concluded that substantial evidence supported the ALJ's finding that this doctor's opinion was not entitled to controlling weight, and denied plaintiff's request for further development of the record because he failed to show it was incomplete. Id. at 49. The Court did note, as did defendant in this brief, that the RFC is an administrative and not medical determination. Id. Curry, however, is inapposite to the instant case. In Curry the ALJ had a medical opinion from a doctor which was utilized, a review

of the record in this case shows there is no such opinion supplied to indicate functional or work limitations.

In Matta, the Court denied the plaintiff's request for further development of the record, holding that an ALJ did not err in discounting one doctor's medical source statement as he provided sufficient reasons for reaching the conclusion, and the decision was supported by substantial evidence. Matta, at 57.

Once again the issue here is different from the issue in Matta, as it pertains to a lack of necessary information altogether, not whether the ALJ chose to accord different weight to opinion evidence and information present in the record.

While this Court agrees that medical documentation from the injury from the 1990s is not necessary, the Court is not persuaded that medical source statements or function-by-function assessments were not needed for a proper RFC determination here. A court must remand "where 'the medical records obtained by the ALJ do not shed any light on the [claimant's RFC], and [where] the consulting doctors did not personally evaluate' the claimant." Martinez v. Berryhill, No. 3:17-cv-843 (SRU), 2019 WL 1199393, at *11 (D. Conn. Mar. 14, 2019) (quoting Guillen v. Berryhill, 697 F. App'x 107, 108-09 (2d Cir. 2017) (summary order)). "The record is insufficient when '[t]he medical records discuss [the claimant's] illnesses and suggest treatment for them, but offer no insight into how [the] impairments affect

or do not affect [the claimant's] ability to work, or [his] ability to undertake the activities of daily life.'" Martinez, 2019 WL 1199393, at *11 (alterations in original) (quoting Guillen, 697 F. App'x at 109). Here, the medical records provide insight into the state of plaintiff's impairments, and his improvement with treatment, but they do not analyze work abilities or functional capabilities. Furthermore, the only functional limitations provided in the record come from the state agency consultants who did not actually examine plaintiff but simply drew information from submitted records. Thus, medical source statements from plaintiff's treating physicians, namely Dr. Mazo, his primary care physician, are necessary for a proper determination of plaintiff's ability to perform work functions.[7]

Therefore, the motion to remand this case to the agency for further development of the record is granted.

## 2. *Consideration of Plaintiff's Pain Allegations*

Plaintiff next argues that the ALJ did not adequately consider his pain testimony. (Dkt. #15-1 at 20.) Defendant argues that the ALJ reasonably evaluated the plaintiff's subjective symptoms under the applicable framework. (Dkt. #17-1 at 7.)

---

[7] Statements from specialists, such as Plaintiff's chiropractors or acupuncturist, would be useful as well.

In applying the two-step framework,[8] the ALJ found that the plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but the plaintiff's statements regarding intensity, persistence, and limiting effects were not entirely consistent with other evidence in the record. (R. 21.) The plaintiff asserts that the ALJ did not analyze in a "meaningful manner" his assertion that he was disabled in whole or in part due to his chronic pain. (Dkt. #15-1 at 20.) Regarding these claims of pain, the ALJ stated "[t]he claimant's allegations of disabling pain and spinal/joint issues are not corroborated by the overall evidence of record (SSR 16-3p)." (R. 22.) In support of this conclusion, the ALJ relied on the fact that the plaintiff received only "conservative treatment," required no surgeries, physical therapy, pain management, regular emergency room visits, or inpatient hospitalizations to address this, as well as the fact that plaintiff's symptoms and conditions improved with treatment and medication. (R. 22.)

---

[8] "The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations.  At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged."  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2011) (citing 20 C.F.R. § 404.1529(b)).  "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record."  Genier, 606 F.3d at 49 (alterations in original) (quoting 20 C.F.R. § 404.1529(b)).

An ALJ may properly determine that a plaintiff's complaints are inconsistent with the record where medical evidence does not sufficiently demonstrate disability and the plaintiff's daily activities demonstrate an ability to perform work. Poupore v. Astrue, 566 F.3d 303, 307 (2d Cir. 2009).[9] "In determining whether [an individual is] disabled, [the ALJ will] consider all [of an individual's] symptoms, including pain, and the extent to which [his or her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(c).

Plaintiff directs the Court to two cases on the "credibility issue," Pino v. Berryhill, Civil No. 3:17-cv-00026 (AWT), *Order Remanding Case* (D. Conn. Mar. 22, 2018) and Pierce v. Colvin, 739 F.3d 1046, 1049-1051 (7th Cir. 2014). In Pino, the Court remanded to ensure that the ALJ "carefully consider all of the evidence in the case record, and also develop the record and make every reasonable effort to resolve inconsistencies, conflicts or evidentiary gaps…." Id. at *5. The Court found that the ALJ mischaracterized evidence used in

---

[9] In Poupore, the plaintiff complained of pain although the objective medical evidence did not support such assertions. Poupore, 566 F.3d at 307. The plaintiff stated that he cared for his one-year-old child, sometimes vacuumed, washed dishes, occasionally drove, watched television, read, and used the computer. Id. The Second Circuit determined that substantial evidence supported the ALJ's determination that the plaintiff could perform light work. Id.

finding that plaintiff had less limitations than was actually the case. Id. at *2-5.

Plaintiff twice asserts that an "ALJ cannot decide that pain does not constitute a disability when no medical evidence refutes other evidence that the pain is real." (Dkt. #15-1 at 20-21.) Plaintiff provides no citation to support this proposition. Additionally, there *is* evidence that plaintiff's pain was not completely debilitating, as outlined by the ALJ. In addition to many cases from other circuits, plaintiff cites one District of Connecticut case here, Puzycki v. Astrue, Civil No. 3:09-cv-01864 (PCD)(JGM), *Recommended Ruling* (D. Conn. Nov. 23, 2010) at 49-50. In Puzycki, the Court remanded for further review, including regarding the objective medical evidence and corresponding assessments, plaintiff's impairments and impacts on work abilities, and his credibility. Id. at 54. However, the facts in Puzycki were remarkably more severe (including hospitalizations, intensive medication, and discussion of potential for surgery due to his pain), and plaintiff's activities were more limited. Id. at 4-6.

Plaintiff cites Hernandez v. Commissioner of Social Security, Civil No. 1:13-cv-959 (GLS/ESH), *Memorandum-Decision and Order,* (N.D.N.Y. Jan. 22, 2015) to further the argument that his complaints of pain were credible. The essence of plaintiff's argument is that an ALJ cannot "bridge the gap" between a

plaintiff's impairments and the functional limitations that result because that requires the advice of a medical source. Id. (internal citations omitted).

Regarding the issue of evaluation of pain, defendant cites Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) to support the argument that an ALJ may exercise discretion in weighing claims of pain with other evidence in the record to properly determine RFC. Defendant notes the process for an ALJ's analysis of pain, and case law that in essence states that the ALJ's credibility finding must be supported by evidence in the record, the evidence must be given proper weight, and specific reasons within the record are specified for the decision. *See* Genier; Cichocki v. Astrue, 534 F. App'x 71, 75 (2d Cir. 2013) (summary order); Mongeur v. Heckler, 772 F.2d 1033, 1040 (2d Cir. 1983); Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010).

Defendant cites Tappan v. Halter, 10 F. App'x 30, 32 (2d. Cir. 2001) (summary order) for the notion that if an individual does not follow prescribed treatment that could improve symptoms, the alleged intensity and persistence may be found to be inconsistent with the record as a whole.

Defendant cites two cases for the argument that plaintiff's course of treatment does not suggest debilitating pain: Netter v. Astrue, 272 F. App'x 54, 56 (2d Cir. 2008) and Wetzel v. Berryhill, 783 F. App'x 44, 47 (2d Cir. 2019). In Netter, the

ALJ relied in part on an inconsistency between Netter's testimony and a treating physician's notes to determine the credibility of his pain allegations. Id. at 55. Additionally, the Court did not accept plaintiff's claim that another treating physician's opinion that plaintiff was disabled should have been given more weight in the analysis, since the doctor's determination was inconsistent with other observations and plaintiff's improved conditions. Id. Defendant cites Wetzel as an example of an ALJ's disability determination that was upheld in part because plaintiff's pain was managed with medications producing minimal side effects and no impairments on his ability to perform light work. Id. at 47.

Defendant notes the ALJ's finding that plaintiff's daily activities were not consistent with his complaints of disabling pain and cites several cases with similar outcomes. (Dkt. #17-1 at 10-11.) See Meyer v. Comm'r of Soc. Sec., 794 F. App'x 23, 26 (2d Cir. 2019) (summary order) (finding plaintiff's testimony regarding daily activities (including walking a mile, doing chores, going shopping, and travelling a significant distance by car) was inconsistent with disabling pain, and the plaintiff could do some work). See also Donnelly v. Barnhart, 105 F App'x 306, 308 (2d Cir. 2004) (summary order) (holding that an ALJ had properly discounted the plaintiff's alleged symptoms in light of the fact that she did household activities).

32

The ALJ must consider "all of the evidence of record, including [the plaintiff's] testimony and other statements with respect to his daily activities." Genier, 606 F.3d at 50. Here, to reach an informed conclusion the ALJ clearly followed this analysis, considering plaintiff's pain allegations in light of the entire record, and the activities plaintiff had reported to be capable of.

Overall, while the Court finds that substantial evidence supports the ALJ's pain credibility determination given the *current* record and remand on this point would be inappropriate, medical source statements may offer new evidence in this area. Upon remand, for the reasons the Court has previously articulated, the ALJ should consider the new assessments and their impact on the credibility of plaintiff's pain allegations.

### 3. *The ALJ's Step Five Findings*

Plaintiff makes an argument that the ALJ's findings at step five of the sequential evaluation process were flawed for two reasons. First, that the job incidence data provided by the VE was inaccurate and the accurate numbers supplied by plaintiff's counsel reflect insufficient jobs available in the national economy. (Dkt. #15-1 at 23-6.) Second, that the numbers provided by the VE are not supported by substantial evidence. (Dkt. #15-1 at 26.)

Defendant argues that substantial evidence supports the ALJ's Step Five finding. (Dkt. #17-1 at 12.) Because this Court has found that the RFC determination requires further development through medical source statements or functional assessments by treating doctors, the Court will not address the second portion of plaintiff's argument as it relates to the RFC. On remand, after reevaluating the RFC, the ALJ may need to pose new hypotheticals in light of any changed limitations.

A VE's failure to provide the scientific data supporting his or her conclusion as to the number of jobs available in the national economy may still be supported by substantial evidence. Biestek v. Berryhill, 139 S. Ct. 1148, 1157 (2019). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case. It takes into account all features of the VE's testimony, as well as the rest of the administrative record." Id.  While the refusal to present scientific data may or may not affect the credibility of the expert's testimony, the analysis "defers to the presiding ALJ, who has seen the hearing up close." Id.

Plaintiff asserts that the VE's testimony "cannot be substantial evidence" because she only recited the report from Job Browser Pro (which, he asserts, was "wildly inaccurate"), and "there was no interpretation – or even expertise – involved." (Dkt. #15-1 at 27.) However, the VE stated on several

occasions during her testimony that she was relying on her own professional experience in answering the ALJ's questions, in particular regarding directional reaching and use of a cane for ambulation. (R. 57, 58, and 60.)

Plaintiff cites Ruenger v. Kijakazi, 23 F. 4th 760, 761 (7th Cir. 2022) to illustrate a scenario where substantial evidence did not support the ALJ's conclusion that a significant number of jobs exist in the national economy for the plaintiff to perform. To elaborate on the "substantial evidence" standard, plaintiff cites Poole v. Saul, 462 F Supp.3d. 137, 164 (D. Conn. 2020) for several recent decisions from this Court.[10]  Plaintiff references Donna S. v. Kijakazi, Civil No. 3:20-cv-01404 (KAD), *Memorandum of Decision* (D. Conn. Jan. 28, 2022) to illustrate that this Court has recently articulated a need for vocational witnesses to "specify the sources used to come up with national job incidence testimony." Further, plaintiff cites Brault v. Comm'r of Soc. Sec., 683 F.3d 443, 450 (2d Cir. 2012) for the

---

[10] This excerpt includes holdings from several cases in this District. Debiase v. Saul, No. 3:19CV00068(RMS), 2019 WL 5485269, at *11 (D. Conn. Oct. 25, 2019) stands for the proposition that an ALJ does not commit error when he or she relies on a VE's testimony based on the experts personal experience, labor market surveys, and published statistical sources to determine the number of jobs available in the national economy. Id. at *11. Lyde v. Berryhill, No. 3:17CV00094(JAM), 2018 WL 4678574, at *4 (D. Conn. Sept. 29, 2018) stands for the proposition that it is sufficient when a VE identifies the sources generally consulted for job numbers. Id. at *4. Similarly, for the proposition that absent additional applicable guidelines, the VE need only identify the sources consulted generally, and not provide greater specificity or supporting documentation. Harper v. Berryhill, No. 3:16CV01168 (SALM), 2017 WL 3085806, at *16 (D. Conn. July 20, 2017).

proposition that courts review the entirety of the VE's testimony, including his or her methodology, to ensure the substantial evidence bar has been met. Plaintiff asserts that Biestek supports this as well. (Dkt. #15-1 at 24.)

Defendant argues that substantial evidence *does* support the ALJ's Step Five finding, and that he properly relied on the VE's testimony in finding that the plaintiff could perform work existing in significant numbers in the national economy. (Dkt. #17-1 at 12.)

Defendant cites a number of cases to support the argument that the standard of review for Step Five findings is "deferential" and "extremely flexible." Brault, 683 F.3d at 449 (quotation marks omitted). Defendant relies on Vilma Seranno S. v. Kijakazi, No. 3:22-CV-00214 (KAD), 2023 WL 2743283, at *7 (D. Conn. Mar. 31, 2023) (internal citations and quotations omitted), a recent case from this District stating that VEs "need not identify with greater specificity the source of his figures or to provide supporting documentation' as long as he 'identified the sources he generally consulted to determine such figures.'" Here, the VE clearly identified the sources she used, including the Bureau of Labor Statistics, Job Browser Pro, the Dictionary of Occupational Titles, and her own professional experience. (R. 53-60.) The fact that she did not provide any sort of step-by-step methodology is not an issue because, as

previously noted, this is not required. In <u>Jones-Reid v. Astrue</u>, 934 F. Supp. 2d 381, 407 (D. Conn. 2012), *aff'd*, 515 F. App'x 32 (2d. Cir. 2013), the Court found a sufficient basis for the ALJ to find the VE's testimony reliable, since she "utilized reliable statistical sources as well personal knowledge and experience to develop the occupational projections provided," despite not providing a "step-by-step description" of methodology. <u>Id.</u> at 407.

Defendant notes that the VE's resume documenting her credentials and experience was in the record, that she testified that her reasoning was consistent with the DOT and her familiarity with the cited occupations. (Dkt. #17-1 at 14.) Defendant relies on <u>Dugan v. Soc. Sec. Admin.</u>, Comm'r 501 F. App'x 24 (2d Cir. 2012) to make the argument that an ALJ may rely on the VE's testimony where it consists of conclusions drawn by the VE based on data and the VE's expertise. In <u>Dugan</u>, the fact that the VE identified the sources generally used, and did not identify the source with any greater specificity, or provide supporting documentation, was still found to be enough. <u>Id.</u> at 25.

With regard to the number of jobs available, "[w]ithin the Second Circuit, "courts have refused to draw a bright line standard for the minimum number of jobs required to show that work exists in significant numbers[,]" <u>Barbato v. Astrue</u>, No. 09

CV 6530T, 2010 WL 2710521, at *7 (W.D.N.Y. July 7, 2010) (citation omitted), but "[c]ourts have adopted a relatively low threshold number." Koutrakos v. Colvin, No. 3:13 CV 1290 (JGM), 2015 WL 1190100, at *21 (D. Conn. Mar. 16, 2015) (citations omitted).

Plaintiff states that his own research of persons employed as office helpers, gate attendants, and information clerks resulted in a total of 9,757 jobs, which he argues is "not a significant number." (Dkt. #15-1 at 26.).

Defendant asserts that despite plaintiff's challenge to the VE's job incidence data testimony, "he has not demonstrated that his attorney is more qualified than the VE to identify the availability of jobs in the national economy." (Dkt. #17-1 at 14.) Defendant notes Bavaro v. Astrue, 413 F. App'x 382, 384 (2d Cir. 2011), in which the Second Circuit reasoned that an ALJ was entitled to credit the VE's testimony and the plaintiff's "conclusory proclamations to the contrary" (relating to industry decline) did not require the Court to disturb that finding. Even though the plaintiff in the instant case attacks more generally the accuracy of the VE's findings, Bavaro can still be applied. Both issues boil down to complaints about the sufficiency of the jobs proffered. In any event, as previously mentioned, this case is subject to remand for failure to develop the record and the Court does not find that the alleged Step Five issues alone are

sufficient to warrant remand in this case.  However, in light of the aforementioned reason for remand and the eventual reformulated RFC, had there been any error in the VE's testimony it would now be rendered moot.

## CONCLUSION

Based on the foregoing reasons, this Court recommends plaintiff's motion to reverse, or remand (Dkt. #15-1) be GRANTED and the Commissioner's motion to affirm (Dkt. #17-1) be DENIED.

This is a recommended ruling. **Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with this order**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object within fourteen (14) days may preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), & 72; D. Conn. L. Civ. R. 72.2(a); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995); Small v. Sec'y of H.H.S., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

SO ORDERED this 15th day of December 2023, at Hartford, Connecticut.


___/s/_____
Robert A. Richardson
United States Magistrate Judge